UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **MATTHEW S. FRENCH, SR.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 4:22-CV-1031 RHH |
| ) | |
| **MARTIN O'MALLEY,**[1] ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant,** ) | |

**MEMORANDUM AND ORDER**

Plaintiff Matthew S. French, Sr. seeks review of the decision of Defendant Social Security Commissioner Martin O'Malley, denying his application for Disability Insurance Benefits (DIB) under the Social Security Act. Because the Court finds that substantial evidence supports the decision to deny benefits, the Court affirms the denial of Plaintiff's application.

**I.      Standards for Determining Disability Under the Social Security Act**

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Social Security Act, a person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010).

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley shall be substituted for Kilolo Kijakazi as the Defendant in this suit. *See* 42 U.S.C. § 405(g).

1

The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 404.1520(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At step one, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At step two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month] duration requirement in [§ 404.1509], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to step four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. § 404.1520(a)(4), which is "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. § 404.1545(a)(1).  *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009).  At step four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611.  If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611.  At step five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g); *McCoy*, 648 F.3d at 611.

Through step four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523.  At step five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform.  *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 404.1560(c)(2).

**II.      Background, Procedural History, Evidence Before the ALJ, and ALJ Decisions**

On May 23, 2016, Plaintiff filed an application for DIB, alleging he was disabled as of February 28, 2016 due to a bulging disk in neck; piece of spine missing; stenosis and bone spurs in neck; bone spurs in shoulders; hand, arm and leg numbness; and arm and hand weakness.  (Tr. 75-85, 196-206)  The Social Security Administration ("SSA") initially denied Plaintiff's claim in

3

July 2016, and he filed a timely request for a hearing before an administrative law judge ("ALJ"). (Tr. 88-92, 93-94)  The SSA granted Plaintiff's request for review and conducted a hearing in August 2018.[2]  (Tr. 25-66)

Plaintiff, born July 18, 1978, testified during the first hearing that he had achieved an associate's degree in business administration. (Tr. 75, 31)  He stated that from approximately 2000 through 2015, he worked as a substance abuse counselor, working at various times with children and adults. (Tr. 32)  Plaintiff lived with his wife and two youngest children, ages 14 and 17. (Tr. 35)

With respect to his physical problems, Plaintiff testified that he was unable to sit, stand or walk for long. (Tr. 34)  Plaintiff stated he could sit comfortably in one spot for five or six minutes, but then his back and shoulders begin to burn and he has to reposition. (Tr. 35)  He testified he could stand in one spot without holding onto something for five or six minutes, before having to move, sit down, or lean against something. (Tr. 36)  He said he utilized a cane to assist with walking when his pain is severe, approximately two to three times a month. (Tr. 36-37)[3]  Plaintiff testified he could carry small objects (although he has trouble manipulating them because his fingers are numb most of the time), but does not try to lift heavier items. (Tr. 39-40)  Plaintiff stated his problems stem from a bulging disc in his neck, stenosis or arthritis in his neck, bone spurs in his neck and shoulders, and arthritis in his spine. (Tr. 34)  When Plaintiff takes medicine his pain is between seven and eight (on a scale from one to ten); without medicine it lies between nine and ten. (Tr. 41)

---

[2] Plaintiff initially appeared without counsel on March 19, 2018. (Tr. 67-72)  After discussion with the ALJ, Plaintiff decided to postpone the hearing until he obtained counsel.
[3] Plaintiff stated he could walk one city block without using a cane or holding onto something. (Tr. 37)

With respect to his abilities and activities, Plaintiff testified that on a typical day he drives his wife to work and his children to school. (Tr. 41)[4] He then "tinkers", attempting to accomplish something productive during the day. (*Id.*) More often than not, however, Plaintiff testified that he spends his days moving around, trying to stay comfortable. (*Id.*) Plaintiff stated he does light cooking, using only the microwave, and tries to help with laundry, washing the dishes and yardwork. (Tr. 42) He said he goes to his kids' activities, but does not attend church, social clubs, or other events. (*Id.*) Plaintiff occasionally engages in woodworking, and watches television at times, although he often falls asleep. (Tr. 50, 52)

A vocational expert testified at the August, 2018 hearing. (Tr. 57-65) The ALJ asked the vocational expert to consider a hypothetical individual of Plaintiff's age and education, with the following limitations:

> [T]he individual would be limited to a full range of light work; however [he] would be limited to sitting four hours out of an eight-hour day; he can stand and walk six out of eight hours; he can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; would be limited to frequently handling and [fingering] and frequently reaching in all directions.

(Tr. 60) The vocational expert stated that a hypothetical individual with those restrictions could perform Plaintiff's past work, as well as other jobs in the national economy. (Tr. 60-61)[5]

In a decision dated October 12, 2018, the ALJ applied the five-step evaluation set forth in 20 C.F.R. § 404.1520 and found that Plaintiff: (1) had not engaged in substantial gainful activity since February 28, 2016, the alleged onset date; and (2) had the following severe impairments: "Abnormalities of the Cervical, Thoracic, and Lumbar Spine to include: Degenerative Disc

---

[4] Plaintiff testified that he is able to drive, "but it's difficult at times." (Tr. 37)
[5] The ALJ posited several other hypotheticals, some of which resulted in the vocational expert saying there would not be work available. (Tr. 61-63)

5

Disease; Cervical Disc Disorder; Radiculopathy, cervical and thoracic region; Spondylosis, lumbosacral region, with pain in the lower extremities; Connective tissue and disc stenosis of intervertebral foramina of cervical region; Hypertension; Obesity", that significantly limited his ability to perform basic work activities as required by SSR 85-28. (Tr. 13) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). (*Id.*)

The ALJ found that, although "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms", "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (Tr. 15) The ALJ assessed the medical opinion from Patricia Allen, Plaintiff's treating nurse practitioner, "little weight", as follows:

> [Ms. Allen] found that due to the claimant's symptoms, he could only sit, stand, or walk for less than 2 hours in an 8-hour workday, would require periods of walking around, and the ability to shift positions and take unscheduled breaks every 30 minutes. She further found the claimant's legs would need to be elevated, and that he would need an assistive device for standing/walking. She further reported that he could never lift over 10 pounds, and could only engage in occasional handling, fingering, reaching in all directions, and feeling. This opinion is inconsistent with the treatment records that demonstrate only mild to moderate abnormalities. In addition, the opinion does not reference the specific impairments that would cause such restrictive limitations.

(Tr. 18)

After "careful consideration of the entire record", the ALJ determined that Plaintiff had the RFC to perform light work, except that:

> [T]he claimant must sit for 4 hours of an 8-hour workday and must stand and walk for 6 hours of an 8-hour workday.[6] The claimant can occasionally

---

[6] The Court notes this portion of the ALJ's RFC determination is inconsistent.

6

>climb ramps or stairs, but can never climb ladders, ropes, or scaffolds.  The claimant can occasionally balance, stoop, kneel, crouch, or crawl.  The claimant can frequently handle and finger, and frequently reach in all directions.

(Tr. 14)  Based on the vocational expert's testimony, the ALJ found that Plaintiff was capable of performing his past relevant work as a Substance Abuse Counselor.  (Tr. 18)  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from February 28, 2016, through the date of the decision.  (Tr. 19)  Plaintiff filed a request for review of the ALJ's decision, but the SSA Appeals Council denied the request.  (Tr. 1-5)

Plaintiff filed a Complaint for Judicial Review of Decision of the Commissioner of Social Security with this Court on June 14, 2019, arguing the ALJ erred in failing to consider evidence of his depression and sleep apnea; in failing to consider whether Plaintiff's impairments met or equaled listing 1.04 (disorders of the spine); and in failing to resolve conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT").  (Case No. 4:19CV1706 JMB, ECF Nos. 1, 14).  In an opinion issued June 4, 2020, United States Magistrate Judge John M. Bodenhausen held the ALJ's failure to address Plaintiff's depression and sleep apnea, either at step two of the sequential analysis or in determining Plaintiff's RFC, was not harmless error and thus necessitated remand.  (Tr. 796-819)  With respect to listing 1.04, after noting that the ALJ summarily found the listing was not satisfied, Judge Bodenhausen stated as follows: "Because this matter is being remanded for further consideration of plaintiff's depression and sleep apnea, the ALJ will have the opportunity to address listing 1.04A in greater detail."  (Tr. 818)  Finally, with respect to alleged conflicts between the vocational expert's testimony and the DOT, Judge Bodenhausen held as follows:  "On remand, the ALJ will have the opportunity to reexamine the requirements of plaintiff's past work and whether it is consistent with the DOT and his RFC."  (Tr. 819)

The SSA conducted a second hearing in October 2020.  (Tr. 731-763)  During the hearing, the ALJ specifically asked Plaintiff's attorney if he contended Plaintiff met or equaled a listing.  (Tr. 741)  Plaintiff's attorney responded "I do not."  (*Id.*)  Plaintiff testified that his arms and hands "go numb", making it difficult for him to type and handle small objects.  (*Id.*)  Plaintiff stated his tremors make it difficult for him to read.  (Tr. 742)  He said his restrictions with sitting and standing remained the same; in other words, he could sit for 10-15 minutes and stand for 5-6 minutes before having to move or readjust.  (*Id.*)  Plaintiff testified he only drives for short distances, and can only perform chores for five or six minutes at a time.  (Tr. 743-744)  With respect to activities, Plaintiff stated that he does watch television, but has difficulty paying attention.  (Tr. 745)  As far as new symptoms, Plaintiff testified he now suffers from dizziness that results in his passing out several times a week.[7]  (Tr. 747)  He further was diagnosed with fibromyalgia, and suffers from chronic gout.  (Tr. 748-749)

Upon questioning from the ALJ, Plaintiff acknowledged that he no longer saw his pain management specialist, Dr. Manchanda, because the doctor felt there was nothing more he could do for Plaintiff.  (Tr. 750-751)  With respect to his sleep apnea, Plaintiff testified that although he utilized a CPAP machine nightly, he still wakes up tired.  (Tr. 751-752)  He stated he used a cane several days a month.  (Tr. 752)

A vocational expert testified at the second hearing.  (Tr. 757-762)  The ALJ asked the `vocational expert to consider a hypothetical individual of Plaintiff's age, education, and work experience, with the following limitations:

> This individual would be able to lift up to ten pounds occasionally, stand and walk for about two hours, and sit for up to six hours in an eight-hour workday with normal breaks.

---

[7] Plaintiff stated that he has fallen and/or injured himself when he has passed out, but has never required emergency or medical treatment.  (Tr. 754)

> The individual would never be able to climb ladders, ropes, or scaffolds and would occasionally be able to climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. The individual would be able to engage in frequent bilateral reaching in all directions, including overhead.
>
> The individual would be able to engage in frequent bilateral handling and fingering. The individual would be able to tolerate occasional exposure to pulmonary irritants such as fumes, odors, dust, gases, chemicals, and poorly ventilated areas and would be able to tolerate no use of dangerous moving machinery and exposure to unprotected heights.
>
> The individual is able to perform simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements involving only simple, work-related decisions and routine workplace changes.

(Tr. 760)  The vocational expert stated such an individual would not be able to perform Plaintiff's past work, as it was classified as skilled. (*Id.*)  However, the vocational expert testified that there existed sedentary, unskilled jobs in the national economy that such an individual could perform, such as hand packer, production worker, and inspector/tester/sorter. (Tr. 761)  The ALJ then changed the hypothetical, to specify an individual who could only occasionally reach, handle, and finger. (*Id.*)  When asked if such an individual could perform any work in the national economy, the vocational expert responded as follows: "Well, it's—the vast majority of unskilled work at the sedentary level require[s] frequent bilateral use of the hands and fingers and reaching. So, it would eliminate those and all other work in the sedentary, unskilled level." (*Id.*)

In a decision dated December 9, 2020, the ALJ applied the five-step evaluation set forth in 20 C.F.R. § 404.1520 and found that Plaintiff: (1) had not engaged in substantial gainful activity since February 28, 2016, the alleged onset date; and (2) had the severe impairments of lumbar degenerative disc disease, cervical degenerative disc disease with herniation and radiation into the upper extremities, essential tremor, gouty arthritis, obstructive sleep apnea, expressive aphasia, syncope, bilateral shoulder osteoarthritis, polyneuropathy, obesity, and major depressive disorder,

9

that significantly limited his ability to perform basic work activities as required by SSR 85-28. (Tr. 691)[8]  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526).  (*Id.*)

The ALJ found that, although "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms", "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]"  (Tr. 694)

The ALJ then considered the medical opinions in the record.  As relevant here, she afforded the medical opinion of Patricia Allen, Plaintiff's treating nurse practitioner, "little weight", as follows:

> Despite an ongoing treating relationship with the claimant, Ms. Allen's opinions are more extreme than the treatment record supports.  Direct examinations, imaging, and testing, while occasionally inconsistent, show full strength and essentially normal sensation in all extremities.  While the claimant does have signs of degeneration in the cervical and lumbar spine, providers note a lack of observable radiculopathy or nerve conduction problems, and nerve impingement consistent with Ms. Allen's conclusions.  While the combined effect of the claimant's impairments supports a finding that he is limited to less than the full range of sedentary exertion, as Ms. Allen opines, her conclusion that he needs to change position every 30 minutes, could only maintain concentration on work-tasks for 80 percent of the day, and would miss more than three work-days every month, are unsupported by testing, imaging, or examinations.

---

[8] The ALJ found Plaintiff's hypertension, GERD, hyperlipidemia, right claw toe, right calcaneal spur, testosterone deficiency, and cystitis, "either individual[ly], in concert, or combined with the claimant's severe impairments, do not create more than minimal functional limitations." (Tr. 691) The ALJ further found Plaintiff's knee pain, chronic pain, fatigue, dizziness, anxiety, and frequent falls were "primarily, symptoms, and do not have a formal medical diagnosis for an underlying condition within the record."  (*Id.*)  The ALJ noted, however, that she "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." (*Id.*)

10

(Tr. 697)

After "careful consideration of the entire record", the ALJ determined that Plaintiff had the RFC to perform sedentary work, with the following restrictions:

> [T]he claimant is able to lift up to 10 pounds occasionally.  He is able to stand/walk for about two hours and sit for up to six hours in an eight-hour workday, with normal breaks.  He is unable to climb ladders/ropes/scaffolds, but is able to balance, stoop, kneel, crouch, and crawl occasionally.  He is able to engage in frequent handling and fingering.  He is able to reach in all directions, including overhead, frequently.  The claimant is able to tolerate occasional exposure to pulmonary irritants such as fumes, odors, dusts, gases, chemicals, and poorly ventilated areas, but he is unable to tolerate exposure to workplace hazards such as unprotected heights and dangerous moving machinery.  He is able to perform simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements, involving only simple work-related decisions, and routine workplace changes.

(Tr. 693)  Based on the vocational expert's testimony, the ALJ found that Plaintiff had the RFC to perform jobs that existed in significant numbers in the national economy, such as hand packer, production worker, and inspector/tester/sorter.  (Tr. 698-699)  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from February 28, 2016, through the date of the decision.  (Tr. 699)

Plaintiff subsequently filed a request for review of the ALJ's decision with the SSA Appeals Council, which denied review.  (Tr. 672-678)  Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the Commissioner's final decision.  *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

### III.   Discussion

Plaintiff claims the ALJ failed to adequately evaluate whether Plaintiff's impairments met listing 1.04 (disorders of the spine).  He further asserts the ALJ erred in discounting the opinion of treating nurse practitioner Patricia Allen, and in failing properly to evaluate Plaintiff's subjective

11

reports.  The Commissioner counters that substantial evidence in the record as a whole supports the ALJ's decision that Plaintiff is not disabled.

### A. Standard of Judicial Review

A court must affirm an ALJ's decision if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.'"  *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)).  A court must consider "both evidence that supports and evidence that detracts from the ALJ's determination, [but it] 'may not reverse the Commissioner's decision merely because substantial evidence supports a contrary outcome.'"  *Id*. (internal quotation marks and citations omitted).

A court does not "'reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'"  *Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)).  Therefore, the Court must affirm the ALJ's decision if "'it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings[.]'"  *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011)).

### B. Listing 1.04 (Disorders of the Spine)

Plaintiff argues that the ALJ erred at step three of the sequential evaluation because she did not consider whether Plaintiff's disability met or equaled the impairment in listing 1.04, disorders of the spine.  (ECF No. 15, PP. 4-7).  "'[T]he listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'"  *Lott v. Colvin*, 772 F.3d 546, 549 (8th Cir. 2014) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)).  "That is, if an adult is not actually

working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits *without a determination whether he actually can perform his own prior work or other work.*'" *Id.* (emphasis in original) (internal quotation marks and citation omitted). "'If the claimant wins at the third step (a listed impairment), []he must be held disabled, and the case is over.'" *Id.* (quoting *Jones v. Barnhart*, 335 F.3d 697, 699 (8th Cir. 2003)).

"'For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.'" *Igo v. Colvin*, 839 F.3d 724, 729 (8th Cir. 2016) (emphasis in original) (quoting *Jones v. Astrue*, 619 F.3d 963, 969 (8th Cir. 2010)). "'An impairment that manifests only some of [the listing] criteria, no matter how severely, does not qualify.'" *Lott*, 772 F.3d at 549 (alteration in original) (quoting *McCoy*, 648 F.3d at 611-12). Moreover, the "severity standards for Listing-level impairments are intentionally high, because the listings [for adults] were designed to operate as a presumption of disability that makes further inquiry unnecessary and ends the sequential process." *Moss v. Berryhill*, No. 4:18-CV-189 NCC, 2019 WL 1275070, at *3 (E.D. Mo. Mar. 20, 2019) (alteration in original) (internal quotation marks and citations omitted). The claimant bears the burden of proving that an impairment or combination of impairments meets or equals the criteria for a specific listing. *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004).

In this case, Plaintiff waived his listing argument during the administrative hearing, when his representative conceded on the record that Plaintiff does not have an impairment that meets or medically equals the severity of one of the listed impairments. (Tr. 741) *See Watson v. Barnhart*, 194 Fed. App'x 526, 529 (10th Cir. 2006) (finding no error when claimant's counsel unambiguously conceded that claimant was not arguing her condition met or equaled a listed impairment, and the ALJ therefore did not analyze whether the claimant's impairments met a listing); *see also Gloth v. Astrue*, No. 4:09-00056-CV-NKL, 2009 WL 3837471 (W.D. Mo. 2009)

13

(same).  It is important to enforce such waivers, to prevent a claimant from thwarting the administrative process by disavowing an argument at the administrative hearing, but then raising the disavowed argument before the district court.  *See Alie v. Berryhill*, No. 4:16CV1353 JMB, 2017 WL 2572287, at *7 n.6 (E.D. Mo. Jun. 14, 2017) ("To allow a claimant to administratively disavow an argument and then raise the disavowed argument before a district court would permit claimants an unjustified second bite at the apple and thwart the administrative process.")[9]

### C.  Medical Opinion Evidence

As noted above, Plaintiff claims the ALJ failed properly to assess the opinion of his treating nurse practitioner, Patricia Allen.  Ms. Allen completed a two-page medical source statement ("MSS") on May 18, 2018.  (Tr. 556-557)  In her MSS, Ms. Allen identified Plaintiff's diagnoses by code, and stated his prognosis was "fair".  (Tr. 556)  In response to a checklist, she described Plaintiff's symptoms as "fatigue, cognitive deficits, weakness, unstable walking, double or blurred vision/partial or complete blindness, increased muscle tension/spasm, speech/communication difficulties, pain, poor coordination, numbness, tingling or other sensory disturbance, swelling, balance problems, depression, shaking tremor, headaches, nausea, and weight change."  (*Id.*)[10]

Ms. Allen indicated that Plaintiff would be able to both sit and stand/walk for less than 2 hours in an 8-hour workday.  (Tr. 556)  She noted Plaintiff would need to include periods of walking around during an 8-hour working day; would need a job that permits shifting positions at will from sitting, standing, or walking; would need to keep his legs elevated with prolonged sitting; would require a cane or other assistive device when standing or walking; and would need to have 20-minute long rest breaks every 30 minutes.  (*Id.*)

---

[9] If Plaintiff's circumstances or conditions have changed, he may consider filing another application and starting the process anew.
[10] Ms. Allen checked nearly every available option in her description of Plaintiff's symptoms.

14

The remainder of the MSS form is in a checklist format.  Ms. Allen indicated that Plaintiff can occasionally lift or carry less than 10 pounds; never lift or carry 10 pounds or more; occasionally twist, stoop/bend, crouch and climb stairs; and never climb ladders.  (Tr. 556)  She said Plaintiff can occasionally reach in all directions, handle, finger and feel.  (Tr. 557)  Ms. Allen opined that depression contributed to the severity of Plaintiff's symptoms, and that his pain frequently was sufficiently severe to interfere with his attention and concentration.  (*Id.*)  Finally, Ms. Allen indicated Plaintiff would have difficulty working a full-time job on a sustained basis due to chronic pain and depression, would likely be off task more than 20% of the time in an 8-hour day, and would miss work more than 3 days per month.  (*Id.*)

As noted above, the ALJ assessed Ms. Allen's medical opinion "little weight."  (Tr. 697)  Plaintiff disagrees, maintaining that in discounting Ms. Allen's opinion, the ALJ ignored the medical evidence of record.

"Once the ALJ has decided how much weight to give a medical opinion, the Court's role is limited to reviewing whether substantial evidence supports this determination, not deciding whether the evidence supports the plaintiff's view of the evidence."  *Beamer v. Saul*, No. 2:18-CV-00094 JAR, 2020 WL 1511350, at *7 (E.D. Mo. Mar. 30, 2020) (citation omitted).  *See also Couch v. Berryhill*, No. 2:18 CV 46 DDN, 2019 WL 1992623, at *6 (E.D. Mo. May 6, 2019) (same).

The ALJ found Ms. Allen's opinion unpersuasive based on several grounds.  First, the ALJ concluded that her opinions were more extreme than the treatment record supported because, for example, while direct examinations, imaging, and testing were occasionally inconsistent, they typically showed full strength and essentially normal sensation in all extremities.  (Tr. 697)  The ALJ further noted that while Plaintiff does exhibit signs of degeneration in the cervical and lumbar

15

spine, his providers noted a lack of observable radiculopathy, nerve conduction problems, or nerve impingement consistent with Ms. Allen's conclusions. (*Id.*) Finally, the ALJ found Ms. Allen's conclusions that Plaintiff would need to change position every 30 minutes, could only maintain concentration on work-tasks for 80 percent of the day, and would miss more than three work-days every month, were unsupported by testing, imaging, or examinations. (*Id.*)

The record contains ample evidence supporting the ALJ's determination. For example, while at times Ms. Allen recommended further testing and/or consultation with specialists, she often prescribed treating Plaintiff's musculoskeletal issues solely with exercise, proper nutrition and weight loss.[11] Ms. Allen frequently recommended that Plaintiff simply continue with his current medication regimen and level of care[12], and acknowledged in her MSS that she only saw Plaintiff every three months, intervals that are inconsistent with treatment for severe physical impairment. (Tr. 556) At no time did Ms. Allen impose restrictions on Plaintiff's activity level. She never prescribed that he utilize an assistive device when ambulating, or elevate his legs when engaged in prolonged sitting. In short, nothing in Ms. Allen's examination records supports the extreme limitations she now advocates.

The evidence Plaintiff submitted from various specialists also does not support Ms. Allen's assessment. Dr. Vivek Manchanda, Plaintiff's pain management doctor, did administer to Plaintiff several steroid injections, and performed a medial branch block. (Tr. 447-449, 460-462, 490-492) He eventually dismissed Plaintiff as a patient in March 2020, however, reflecting that he saw no

---

[11] *See, e.g.*, Tr. 344, 417, 422, 430, 513, 518, 547, 552, 990, 1006, 1040.
[12] *See, e.g.*, Tr. 417, 518, 547, 1040.

16

reason that Plaintiff would be unable to work other than obesity.  (Tr. 1145)[13]  Dr. Andrew Godbey, a neurologist, performed an MRI of Plaintiff's brain and found "nothing remarkable."  (Tr. 642) Dr. Godbey recommended only that Plaintiff begin taking medication and return in six months. (Tr. 644, 646)  Dr. Tobias Mattei, a neurosurgeon, stated in August 2018 that Plaintiff seemed to be in moderate discomfort, but no acute distress.  (Tr. 889)  He recommended that Plaintiff continue with conservative treatment, as it was unlikely a surgical procedure would provide significant relief.  (Tr. 890)  Finally, neurosurgeon Dr. Ian Dorward found in June 2020 that Plaintiff was in no apparent distress, had normal muscle bulk and tone throughout, and was able to stand and walk with a slow but stable gait.  (Tr. 1046)  He recommended that Plaintiff pursue an additional epidural steroid injection, and possibly obtain a CT scan to determine whether he might benefit from surgical intervention.  (Tr. 1047)  There is no evidence in the record that Plaintiff followed up on these suggestions.

Upon consideration of the foregoing, the Court finds substantial evidence in the record supports the ALJ's decision to discount Ms. Allen's opinion.  The ALJ did not simply substitute her own interpretation for Ms. Allen's opinion, but instead afforded the opinion little weight because although the records showed some restrictions due to Plaintiff's musculoskeletal impairments, her opinion was "more extreme than the treatment record supports."  (Tr. 697)  The ALJ's conclusion was supported earlier in her decision by citations to the record.  (Tr. 693-697)

For his part, the Commissioner notes the record contains evidence that:  (1) while Ms. Allen's notes generally reflected reduced cervical and lumbar spine ranges of motion, he had normal sensory, mostly normal balance and gait, and normal coordination; and (2) while her notes

---

[13] Dr. Manchanda noted he believed Plaintiff would benefit most from weight reduction, and that he was weaning Plaintiff from all medications as he "failed all injections with no relief and per [Plaintiff] medications are not helping either."  (Tr. 1145)

17

reflected unstable gait, they further stated Plaintiff was full-weight bearing and utilized no assistive device.  (ECF No. 18, PP. 8-9).

Plaintiff is correct that there are medical records showing, among other things, a straightening of Plaintiff's normal cervical lordosis, a disc herniation abutting the ventral cord with flattening and cord displacement at C5/6, a herniation with severe bilateral foraminal encroachment at C6/7, multiple areas with spurs and facet arthrosis, positive cervical distraction tests bilaterally, positive Spurling's test bilaterally, and poor muscle tone in his cervical spine.  (ECF No. 15, PP. 9-10)  However, this Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence on the record as a whole.  *See* 42 U.S.C. §§ 405(g); 1383(c)(3);  *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).  As long as there is substantial evidence in the record that supports the decision, this Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). *See also Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (internal quotation marks and citation omitted) (An ALJ's decision is not to be disturbed "so long as the ALJ's decision falls within the available zone of choice.  An ALJ's decision is not outside the zone of choice simply because [the Court] might have reached a different conclusion had [the Court] been the initial finder of fact."). Here, the ALJ's decision, and, therefore, the Commissioner's, was within the zone of choice.  *See Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017).   The Court therefore finds that substantial evidence supported the ALJ's determination with respect to Ms. Allen's MSS.

D. Plaintiff's Subjective Complaints

18

Plaintiff finally asserts the ALJ erred in evaluating Plaintiff's subjective reports. Specifically, Plaintiff complains the record consistently documents his chronic pain, which he described as radiating, burning, shooting, and worsened by changing positions, engaging in daily activities, standing and walking. (ECF No. 15, P. 13) Plaintiff also maintains his pain causes difficulty concentrating and sleeping. (*Id.*) Plaintiff asserts this failure requires remand, to allow the ALJ to evaluate his symptom reports properly. (*Id.*)

Defendant responds that the ALJ properly considered the evidence, and determined that Plaintiff's subjective claims were not entirely consistent with the record. (ECF No. 18, P. 10) Defendant asserts that "[c]onsistent with the Commissioner's regulations, the ALJ properly considered the objective medical evidence, examination evidence, Plaintiff's treatment and response to treatment, opinion evidence, Plaintiff's activities of daily living, and his testimony." (*Id.*)

As described above, this Court's role is to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires*, 564 F.3d at 942; *Estes*, 275 F.3d at 724. So long as there is substantial evidence in the record that supports the decision, this Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley*, 258 F.3d at 747.

The Court has reviewed the entire transcript and the parties' briefs. Based on a careful review of the record, and for the reasons stated in the ALJ's well-reasoned opinion and in Defendant's brief, the Court finds this portion of Plaintiff's argument on appeal to be without merit, and further finds that the record as a whole reflects substantial evidence to support the ALJ's

decision.  *See Sledge v. Astrue*, 364 Fed. App'x 307 (8th Cir. 2010) (upholding district court's summary affirmance of the ALJ).

The Court acknowledges that the record contains conflicting evidence, and the ALJ could have reached a different conclusion.  However, this Court's task is not to reweigh the evidence presented to the ALJ.  The ALJ's weighing of the evidence here fell within the available "zone of choice," and thus the Court cannot disturb that decision merely because it might have reached a different conclusion.  *See Buckner*, 646 F.3d at 556.

**IV.    Conclusion**

Having reviewed the entire record, the Court finds the ALJ made a proper RFC determination based on a fully and fairly developed record.  Consequently, the Court determines that the ALJ's decision is supported by substantial evidence.

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of Defendant denying Social Security benefits to Plaintiff is **AFFIRMED**.

A separate judgment in accordance with this Memorandum and Order is entered this date.

Dated this 23rd day of January, 2024.

_____
RODNEY H. HOLMES
UNITED STATES MAGISTRATE JUDGE